IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES RYAN BLOOM,

Petitioner,

v.                                    CASE NO. 20-3260-SAC

DEREK SCHMIDT,

Respondent.

MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2254. Petitioner challenges his convictions in the District Court of Reno County, Kansas, of one count of rape, six counts of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior.

**Nature of the petition**

Petitioner seeks relief from his convictions, alleging that ineffective assistance of counsel led him to reject a plea agreement offer and instead proceed to trial, where he was convicted and sentenced to a term longer than offered under the plea agreement.

**Procedural background**

On May 12, 2006, Petitioner was arrested and charged in the District Court of Reno County, Kansas, with six counts of aggravated indecent liberties with a child and one count of lewd and lascivious behavior. *State v. Bloom*, 2009 WL 743049, *2 (Kan. Ct. App.

1

2009)(unpublished opinion) (*Bloom I*), *rev. denied*, Jan. 7, 2010. On June 9, 2006, the State amended the complaint to add one count of rape. *Id.*

During pretrial proceedings, both before and after the complaint was amended, the State approached Petitioner with multiple plea agreement offers. The Kansas Court of Appeals (KCOA) later stated:

> [I]gnoring any terms regarding sentencing disposition or peripheral considerations, Bloom rejected seven plea offers ranging from two counts of aggravated indecent liberties with a child up to a final offer of six counts of aggravated indecent liberties with a child and one count of lewd and lascivious behavior in exchange for dismissing the rape charge. If Bloom had accepted the final plea offer, he faced a maximum potential sentence of 122 months in prison, *i.e.*, twice the base sentence of 61 months.

*Bloom v. State*, 2016 WL 2610265, *1 (Kan. Ct. App. 2016)(unpublished opinion) (*Bloom II*), *rev. denied* Aug. 24, 2017.

As a result of the failed plea negotiations and the district court's denial of Petitioner's motion to dismiss on speedy trial grounds, Petitioner proceeded to trial and, on October 19, 2006, a jury convicted him of one count of rape, six counts of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior. On December 15, 2006, he was sentenced to a prison term of 330 months. On March 13, 2009, the KCOA affirmed the convictions, rejecting Petitioner's arguments that the district court erred by denying a motion to dismiss for speedy trial

2

violations, motions to suppress, and a motion for mistrial; by refusing to instruct the jury on attempted rape; and by imposing aggravated presumptive sentences. The Kansas Supreme Court denied review on January 7, 2010. *Bloom I*, 2009 WL 743049, at *1.

On January 5, 2011, Petitioner filed a motion for post-conviction relief under K.S.A. 60-1507, arguing, among other things, that attorneys Sarah McKinnon and Kiehl Rathbun had provided ineffective assistance of counsel. With respect to plea bargaining, Petitioner claimed that trial counsel had failed to correctly advise him of the maximum sentence he faced if convicted of all counts at trial, the strength of the State's case against him, and the difference in the maximum penalty of the final plea offer and the sentence he could get if convicted at trial. The district court appointed attorney Pam Parker to represent Petitioner during the proceedings and, after a hearing, dismissed all of Petitioner's claims except those involving ineffective assistance of trial counsel during plea negotiations and at sentencing.

Petitioner later withdrew his claim of ineffective assistance of counsel at sentencing. In a written journal entry filed on November 28, 2011, the district court summarily granted the State's motion to dismiss the remaining claim and terminated the proceedings.

Petitioner appealed, and attorney Sam Kepfield was appointed to represent him on appeal; Parker withdrew from the matter. The

KCOA reversed and remanded the case to the district court for an evidentiary hearing and findings regarding the effectiveness of trial counsel during plea negotiations. *Bloom II*, 2016 WL 2610265, at *1. The district court held the hearing, at which Petitioner, McKinnon, and Rathbun testified, and on June 19, 2013, the district court again denied relief.

Petitioner appealed. In November 2013, Kepfield moved to withdraw, and Petitioner was appointed new counsel. *See* Online Records of the Kansas Appellate Courts, Appeal No. 110,577. Petitioner then alleged to the KCOA that he had received ineffective assistance of counsel from Kepfield during the K.S.A. 60-1507 proceedings. Accordingly, in April 2014 and at Petitioner's request, the KCOA remanded the matter to the district court for consideration of that claim.

The district court held an evidentiary hearing on September 22, 2014. Petitioner's counsel, Michael Whalen, advised the district court that he intended to call Larry McNeely and Parker to testify and he might call Kepfield. At Whalen's request and upon the representation that Parker was unavailable to testify, the district court agreed to take judicial notice of statements Parker had made at the evidentiary hearing in October 2011, at which she represented Petitioner.

In its subsequent order denying relief, the district court summarized Parker's statements as follows:

4

Pam Parker, petitioner's former 60-1507 counsel, stated she had talked to Sarah McKinnon, petitioner's trial counsel, about plea negotiations. Parker made this statement about McKinnon, "She was also on the case but was not present for plea negotiations. . ." Present counsel urges the court to find Kepfield was deficient in not impeaching McKinnon with this statement. The most reliable witness concerning McKinnon's participation in plea negotiations is McKinnon herself.

The district court also reviewed the testimony from the 2013 remand hearing:

Kepfield presented Sarah McKinnon as a witness at the 60-1507 hearing June 10, 2013. McKinnon testified in detail about the plea negotiations prior to trial. McKinnon testified every offer made by the State was discussed with petitioner, either by herself or by Kiehl Rathbun, an attorney in the public defender's office. Rathbun was disbarred on October 26, 2007. At all relevant times herein, Rathbun was a licensed attorney.

And finally, the district court described the testimony presented at the 2014 hearing:

McNeely was a volunteer at a prison and knows petitioner through his volunteer work. McNeely had several conversations with Sam Kepfield, petitioner's appointed 60-1507 counsel, while the proceeding was pending. McNeely advised Kepfield about a conversation McNeely had with Kiehl Rathbun, one of Petitioner's trial attorneys. McNeely's notes of his conversation with Rathbun were entered as petitioner's exhibit 1. McNeely attended the 60-1507 trial planning to testify for petitioner but Kepfield advised his testimony was not needed.

. . . Bloom testified on rebuttal he talked to Kepfield about McNeely being called as a witness. He understood both of his attorneys, Kiehl Rathbun and Sarah McKinnon, believed the State would not be successful on the charge of rape.

. . . Kepfield [testified that he] was appointed to represent petitioner on his 60-1507 complaint. The issue

5

for evidentiary hearing was whether petitioner was denied his right to effective assistance of counsel during plea bargaining. Kepfield had contact with McNeely by phone and by email. Kepfield did not believe McNeely's testimony was relevant to the issue before the court. Kepfield presented the testimony of Sarah McKinnon, Kiehl Rathbun, and petitioner. McKinnon and Rathbun jointly represented petitioner at the trial level.

In an order issued on October 2, 2014, the district court concluded that based on all the evidence before it, Petitioner failed to prove Kepfield's representation fell below an objective standard of reasonableness, so Petitioner had failed to meet the first requirement of the test for ineffective assistance of counsel.

In accordance with the KCOA's remand order, Petitioner filed a supplemental notice of appeal from that order. He later abandoned the issue, however, leaving the sole issue before the KCOA as whether McKinnon and Rathbun provided effective assistance of counsel during plea negotiations. *See Bloom II*, 2016 WL 2610265, at *1-2. Petitioner alleged McKinnon and Rathbun were ineffective because they failed to advise him about special sentencing rules that increased the term of imprisonment he could face if convicted at trial and they incorrectly advised him regarding his chances of success at trial and on appeal, by assuring him that "'the rape could not be proved and that the speedy trial issue was a winner on appeal." *Id.* at *2. On May 6, 2016, the KCOA affirmed the district court's denial of relief; the KSC denied review on August 24, 2017.

On August 31, 2017, Petitioner filed a second motion under

K.S.A. 60-1507, challenging the effectiveness of Parker, Kepfield, and Whalen. *Bloom v. State*, 2020 WL 1074704 (Kan. Ct. App. 2020) (unpublished opinion) (*Bloom III*), *rev. denied* Sept. 30, 2020. The district court denied relief on January 6, 2018. The KCOA affirmed the denial on March 6, 2020, and the KSC denied Petitioner's review on September 30, 2020.

Petitioner commenced this federal habeas action on October 16, 2020.

### Factual background

The KCOA made the following findings of fact: Petitioner's minor adopted daughter, C.B., disclosed to her mother and to a therapist in Colorado that Petitioner had sexually abused her. *Bloom I*, 2009 WL 743049, at *1. "On April 6, 2006, [Petitioner] provided Kansas Bureau of Investigation (KBI) Agent Jeff Newsum with a written confession wherein [Petitioner] admitted he 'fondled the breasts and touched the clitoris' of C.B. but 'did not penetrate the vaginal area.'" *Id.* at *1. Later that month, Bloom made inculpatory statements during a videotaped interview and C.B. completed a videotaped interview in which she "described several instances of sexual abuse" by Petitioner. *Id.* at *2.

Because resolution of this federal habeas matter does not require a detailed recitation of the underlying facts, there is no need to delve into more detail. Additional facts are incorporated in the analysis below as needed.

**Standard of review**

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations omitted). The Court presumes the correctness of the fact-finding by the state court unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

Moreover, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, [Supreme Court] cases require that the federal court use a '"doubly deferential standard"' of review that gives both the state court and the defense attorney the benefit of the

doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation omitted). These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and they require that state court decisions receive the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A habeas petitioner generally must exhaust available state court remedies before seeking federal habeas relief. "A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The presentation of a claim "requires that the petitioner raise in state court the 'substance' of his federal claims." *Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015).

## Discussion

Petitioner seeks habeas corpus relief on the claim that he was denied the effective assistance of counsel, which he asserts the state courts erred in resolving against him. His claim of state-court error involves the following assertions:  (1) the state-court decisions were contrary to clearly established Supreme Court precedent because (a) the circumstances of his case are materially indistinguishable from those in *Lafler v. Cooper*, 566 U.S. 156

(2012), but the state courts reached a result different from the result in *Lafler*, and (b) the state courts applied the wrong law; and (2) the state courts unreasonably applied the law to the facts of Petitioner's case. Each of these arguments will be addressed in turn, but first, an overview of the relevant United States Supreme Court cases is helpful.

Claims of  ineffective assistance are analyzed under the test established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, "a defendant must show both [(1)] that his counsel's performance fell below an objective standard of reasonableness and [(2)] that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted). The Supreme Court has addressed whether certain scenarios show deficient performance by counsel that satisfies the first part of the *Strickland* test or result in sufficient prejudice to satisfy the second part of the *Strickland* test. Petitioner's first and second arguments in this matter hinge upon two such cases: *Frye v. Missouri*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012).

### *Frye v. Missouri* and *Lafler v. Cooper*

During plea negotiations on a criminal charge brought against Frye in Missouri state court, Frye's attorney "did not advise Frye" that the State made a time-sensitive offer of "a choice of two plea bargains." *Frye*, 566 U.S. at 138. *Id.* The offers expired and Frye

later pled guilty without the benefit of a plea agreement, which led to a more severe sentence than had been offered in the plea agreements. *Id.* at 138-39.

By the time the United States Supreme Court decided *Frye*, it was well-settled that the Sixth Amendment right to effective assistance of counsel applies during plea negotiations. *Id.* at 140. But the *Frye* Court noted that the case before it was different than previous cases because it did not allege that ineffective assistance of counsel led to the acceptance of a plea agreement offer. Rather, *Frye* involved a challenge "to the course of legal representation . . . with respect to other potential pleas and plea offers" which the defendant had *not* accepted. *Id.* at 141-42.

The *Frye* Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. In other words, "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.* The *Frye* Court then proceeded to the second question under *Strickland*: whether Frye had shown sufficient prejudice. *Id.* at 147. It held that "a defendant in Frye's position must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to

the agreement and that it would have been accepted by the trial court." *Id.* at 149-50. Ultimately, the prejudice analysis required resolution of state-law questions, so the Court remanded the case for further proceedings in state court. *Id.* at 150-51.

The Supreme Court issued its opinion in *Lafler* the same day as its opinion in *Frye*. *Lafler*, like *Frye*, involved allegations of ineffective assistance of counsel in plea negotiations for state-court criminal proceedings. *Lafler*, 566 U.S. at 161. Unlike Frye, however, Lafler's counsel did not fail to communicate a plea offer. Rather, counsel communicated the offer to Lafler, who rejected it "on advice of counsel." 566 U.S. at 160. Lafler proceeded to a jury trial and, after the jury convicted him, he "received a sentence harsher than that offered in the rejected plea bargain." *Id.*

In the Supreme Court, "all parties agree[d] the performance of [the defendant's] counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial." *Id.* at 163. Accordingly, the only question before the Supreme Court was "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Id.* The *Lafler* Court held that to demonstrate the required prejudice,

> a defendant must show that but for the ineffective advice
> of counsel there is a reasonable probability that the
> plea offer would have been presented to the court (*i.e.,*
> that the defendant would have accepted the plea and the
> prosecution would not have withdrawn it in light of

intervening circumstances), that the court would have
accepted its terms, and that the conviction or sentence,
or both, under the offer's terms would have been less
severe than under the judgment and sentence that in fact
were imposed.

*Id.* at 164. The Court held that Lafler had done so, so it remanded

for further proceedings. *Id.* at 174.

With this legal background in mind, the Court will now address

Petitioner's arguments.

**Was the state-court decision "contrary to" clearly established**
**Supreme Court precedent?**

As noted above, a state prisoner may obtain federal habeas

relief if the state-court decision is "contrary to . . . clearly

established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1). The Tenth Circuit has

explained:

[A] state-court decision is "contrary to" the Supreme
Court's clearly established precedent if it "applies a
rule that contradicts the governing law set forth in
[Supreme Court] cases" or if it "confronts a set of facts
that are materially indistinguishable from a decision of
th[e] Court and nevertheless arrives at a result
different from that precedent."

*Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405-08 (2000)).

Petitioner argues that the state-court decision was contrary

to clearly established Supreme Court precedent because (a) the

circumstances of his case are materially indistinguishable from

those in *Lafler v. Cooper*, 566 U.S. 156 (2012), but the state courts

13

reached a result different from the result in *Lafler,* and (b) because the state courts applied *Frye* instead of *Lafler*.

### Comparison to *Lafler*

Petitioner's argument that the state courts should have reached the same result as the *Lafler* Court fails because the facts in his case are materially distinguishable from those in *Lafler*. As noted above, the parties in *Lafler* agreed that by advising Lafler not to take the plea offer, Lafler's counsel's performance fell below an objective standard of reasonableness. In other words, the parties agreed that the facts supported a finding that Lafler had satisfied the first part of the *Strickland* test. Thus, whether counsel's performance was deficient was not before the Court and the Court did not rule on it. 566 U.S. at 174 ("[T]he fact of deficient performance has been conceded by all parties. The case comes to us on that assumption, so there is no need to address this question."). The Court explained, however, that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id*.

In contrast, the record in the present case reflects that the advice Petitioner received from McKinnon and Rathbun and whether it was constitutionally sufficient were hotly contested during the K.S.A. 60-1507 proceedings and were the bases for the district court's denial of relief. The district court's order denying relief made factual findings that reflect no deficient performance and the

district court expressly held that Petitioner failed to show that McKinnon and Rathbun's "performance fell below an objective standard of reasonableness." The KCOA affirmed this holding.

Thus, on one hand, we have *Lafler*, in which the reasonableness of counsel's performance was not in issue. On the other hand, we have Petitioner's K.S.A. 60-1507 proceedings, in which the reasonableness of counsel's performance was contested and ultimately was the dispositive issue. These cases are materially distinguishable, so the fact that Petitioner's result differed from the result in *Lafler* does not mean that the state-court decision was contrary to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to federal habeas relief based on this claim.

### Did the state courts apply the wrong law?

Petitioner also contends that the state courts applied *Frye* when they should have applied *Lafler*, so the decisions denying relief were contrary to clearly established Supreme Court precedent. *See Harmon*, 936 F.3d at 1056 (quoting *Williams*, 529 U.S. at 405, for the statement that "a state-court decision is 'contrary to' the Supreme Court's clearly established precedent if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'"). Petitioner's argument on this point is similarly unpersuasive.

First, the state-court records do not support Petitioner's

15

assertion that the state courts applied *Frye* "instead of" *Lafler*. When the KCOA first remanded Petitioner's first K.S.A. 60-1507 for further proceedings, it did so with express instructions that the district court "conduct an evidentiary hearing and make findings under *Lafler*." In the subsequent written order denying relief, the district court cited *Lafler* for the holding that defendants are entitled to effective assistance of counsel during plea negotiations and then cited *Strickland* for the general test for ineffective assistance of counsel:   (1) performance below an objective standard of reasonableness and (2) prejudice from the deficient performance.

The district court summarized the testimony that had been presented at the hearing and made findings of fact based on its evaluation of the testimony. Generally speaking, the findings of fact credited McKinnon and Rathbun's testimony and did not credit Petitioner's testimony. The court specifically held:

> On May 5, 2006, [Mr. Bloom] appeared before District Judge Joseph L. McCarville. [He] was advised of the possible penalties of each crime charged. On June 9, 2006, Judge McCarville advised [Mr. Bloom] of the possible penalty for the newly added crime of rape. Ms. McKinnon advised [Mr. Bloom] of the possible penalty for each crime. Ms. McKinnon discussed with [Mr. Bloom] each plea offer by the State. Ms. McKinnon did not misrepresent to [Mr. Bloom] the likelihood of a successful appeal on the speedy trial issue. Ms. McKinnon did not curtail her representation of [Mr. Bloom] due to a concern about monitored conversations. Ms. McKinnon did not lead [Mr. Bloom] to believe the State would not be successful in prosecuting [him] if the victim failed to appear. Mr. Rathbun's testimony confirms Ms. McKinnon's testimony

16

except as to the effect of the perceived monitoring of conversations. Mr. Rathbun's assertion of failure to receive discovery was not confirmed by Ms. McKinnon. Ms. McKinnon was lead counsel in the trial and even if Mr. Rathbun felt his representation was compromised, the court finds Ms. McKinnon alone could have and did provide effective assistance of counsel. [Mr. Bloom] was afforded effective assistance of counsel throughout the proceedings. The decision to reject the multiple plea offers was [Mr. Bloom's] to make.

Ultimately, the district court ruled that Petitioner "failed to show his counsel's performance fell below an objective standard of reasonableness." In other words, Petitioner failed to meet his burden of proof on the first *Strickland* prong. To the extent that *Lafler* addressed the first *Strickland* prong, it did not alter it. Nor did *Frye*. Accordingly, nothing in the district court's order supports the conclusion that the district court applied *Frye* or any law that did not govern the issues before it.

Similarly, nothing in the KCOA opinion supports Petitioner's assertion that the KCOA used *Frye* instead of *Lafler* to direct its analysis. In setting out the applicable and controlling caselaw, the KCOA first explained that because the district court had held an evidentiary hearing, the KCOA's duty on appeal was to determine— without assessing witness credibility or reweighing evidence— whether the district court's factual findings were supported by substantial competent evidence and whether its legal conclusions based on those facts were sound.

Although the KCOA cited *Frye* when it set forth the appropriate standards of review and tests for ineffective assistance of counsel,

it did so only three times. *Bloom II*, 2016 WL 2610265, at *2-3. The first was for the holding that the constitutional right to counsel extends to plea bargaining, for which the KCOA also cited *Lafler*. The second was for the holding that trial counsel must communicate formal plea offers to a defendant. There is no indication, however, that the KCOA based its ultimate ruling on whether counsel communicated plea offers to Petitioner. The third reference to *Frye* was to a portion of *Frye* that quoted *Lafler*.

In its analysis, the KCOA expressly applied the *Strickland* test and "the standards set in *Lafler*." *Bloom II*, 2016 WL 2610265, at *2-3. The record does not support Petitioner's assertion that the state courts' rejection of his claims was based on analysis under *Frye*, nor does it reflect that the KCOA applied any law that did not govern the matter before it.

This leads to the second reason Petitioner's argument on this point fails:  there is no indication that *Frye* "contradicts" any holding in *Lafler* or *Strickland.* The Supreme Court has explained that "a state-court decision is 'contrary to' the Supreme Court's clearly established precedent if it 'applies a rule that *contradicts* the governing law set forth in [Supreme Court] cases." *See Harmon*, 936 F.3d at 1056 (emphasis added)(quoting *Williams*, 529 U.S. at 405). But *Frye* and *Lafler* are not contradictory, either in relation to each other or relation to *Strickland*. Rather, they each apply, albeit in different ways, the framework set forth in *Strickland*.

18

*Frye* held that in order to provide the constitutionally guaranteed level of assistance during plea negotiations, counsel must communicate all plea offers to the defendant. Put another way, *Frye* clarified one way to meet the first part of the *Strickland* test: by showing that counsel did not communicate a plea offer to his or her client. *Lafler* did not address the first part of the *Strickland* test because, as explained above, the parties agreed that counsel had provided deficient assistance. Instead, *Lafler* focused on the second part of the *Strickland* test: how to show sufficient prejudice when counsel's deficient assistance caused the rejection of a plea offer.

Although *Frye* and *Lafler* involved distinct factual scenarios and analyzed different portions of the *Strickland* test, neither case contradicts each other, nor does either case contradict *Strickland*. The state courts applied the correct legal standards to Petitioner's arguments. Accordingly, Petitioner is not entitled to relief based on this claim.

**Did the state courts unreasonably apply the law to the facts of Petitioner's case?**

Petitioner also contends that the state courts unreasonably applied the law to the facts of his case. He argues that the district court erred by finding that although Rathbun "made errors while representing Mr. Bloom, . . . his errors were cured by Mr. Bloom's other attorney, Ms. Sarah McKinnon." The record does not support

19

Petitioner's assertion that the district court made this finding. Rather, the district court order states: "Ms. McKinnon was lead counsel in the trial and *even if* Mr. Rathbun felt his representation was compromised, the court finds Ms. McKinnon alone could have and did provide effective assistance of counsel." (Emphasis added.)

Next, Petitioner asserts that McKinnon's testimony and credibility were impeached by Petitioner's previous attorney, Pam Parker, and the district court ignored evidence from McNeely that corroborated Petitioner's testimony and petition for relief. This argument is difficult to understand due to the timing of the evidence to which Petitioner points.

The state-court holding Petitioner challenges in this federal habeas action is the ruling that he failed to establish that McKinnon and Rathbun provided ineffective assistance of counsel during pretrial plea negotiations. That ruling was initially made by the district court in June 2013. McNeely did not testify until the 2014 hearing on remand, which was focused on the issue of Kepfield's representation of Petitioner at the 2013 hearing. Thus, at the time the district court ruled on the effectiveness of McKinnon and Rathbun in 2013, McNeely's testimony had not yet occurred.

The statements by Parker which Petitioner now points to occurred at a hearing in 2011, well before the 2013 hearing. Specifically, while arguing against a motion at the October 2011

hearing, Parker stated that "McKinnon informed me that Kiehl was the lead attorney on this. She was basically standby counsel." But Parker's comments were not admitted into evidence until the 2014 hearing. Thus, they were not before the district court at the time of the ruling on whether McKinnon and Rathbun provided effective assistance of counsel. In summary, at the time the district court made the decision Petitioner now challenges, neither McNeely's testimony nor Parker's comments were before the district court for consideration.[1]

Even setting aside this problem with Petitioner's argument, his contention that the Kansas courts unreasonably applied the law to the facts of his case fails. Petitioner challenges the way in which the district court evaluated the credibility of the witnesses who testified at the 2013 evidentiary hearing and weighed the evidence before it and the KCOA's failure to alter those findings.

But as the KCOA explained:

> In considering appeals after the district court has held an evidentiary hearing, we review the district court's underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo.
> Substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Appellate courts do not reweigh evidence or reassess the credibility of the witnesses.* Instead, we must accept as true the inferences that

---

[1] Although the KCOA did not rule on the claim of ineffective assistance of counsel at plea-bargaining until after the 2014 hearing, the 2014 hearing did not constitute a reopening of the plea-bargaining claim. As the district judge stated at the beginning of the hearing and Petitioner's counsel confirmed, the 2014 hearing was "an evidentiary hearing on the question of whether Mr. Bloom was denied his right to effective assistance of counsel for his 60-1507 proceeding."

support the trial court's findings.

*Bloom II*, 2016 WL 2610265, at *2 (emphasis added and citations omitted).

The KCOA held that the record supported the conclusion that Petitioner was aware of the special sentencing rules and that counsel had discussed the rules with Petitioner. It explained:

> [T]he record supports that trial counsel properly counselled Bloom on both of the special sentencing rules and the corresponding impact they had on his possible sentence. Bloom does dispute the district court's finding that he was properly advised of the severity level and sentencing range for each charge against him, including the rape charge. McKinnon testified that she explained the sentencing ranges and double rule to Bloom if he was convicted of rape. McKinnon also testified that she discussed the final plea offer from the State and Bloom rejected it. The final plea offer clearly acknowledged that Bloom would benefit at sentencing from the double rule if he accepted the offer.
>
> As for the double-double rule, the record supports that Bloom was aware of the implications of this special sentencing rule. On September 14, 2006, the State filed a motion seeking an upward durational departure sentence citing, in part, the fiduciary relationship between a parent defendant and child victim as an aggravating factor. See *State v. Ippert,* 268 Kan. 254, 260, 995 P.2d 858 (2000). McKinnon testified that she discussed the ramifications of that motion with Bloom and that he faced 660 months in prison. McKinnon also testified that she discussed the September 28, 2006, plea offer from the State with Bloom. That plea offer specified, in part, that the State would dismiss the pending departure motion. This would have limited Bloom's exposure to approximately 10 years in prison.
>
> We find no error in denying Bloom relief on his claims regarding the lack of advice from trial counsel regarding the two special sentencing rules. We turn now to his claims of incorrect legal advice.

. . .

[T]he district court found that Bloom did not
receive incorrect legal advice. This finding is supported
by substantial evidence.

A review of the record reveals that McKinnon
testified that she had discussed with Bloom the strengths
and weaknesses of the State's case against him but
acknowledged that Rathbun "had the bulk of those
conversations with [Bloom]." McKinnon testified that she
discussed with Bloom the speedy trial related issues and
the corresponding motion to dismiss. She acknowledged
telling Bloom that he had a good speedy trial argument
and that if he entered a plea he would waive any appeal
issues but clarified that she "could not tell him with
any degree of certainty what an appeal court would do"
with the issue. McKinnon stated she believed that the
speedy trial issue may have factored into Bloom's
decision to reject plea offers.

Rathbun also testified that he had discussed with
Bloom the strengths and weaknesses of the State's case.
He summarized his discussion about the strengths of the
State's case as follows:

"[T]he strength of their case depended on the
availability of witnesses. And if you assume they
had them available, and they were cooperative, they
had an extremely strong case. If the witnesses were
not available or were not cooperative in the sense
they invoked their Fifth Amendment rights against
incrimination and were not available to testify
against Mr. Bloom, they had an extremely weak case."

Rathbun also considered any evidence of Bloom's
confession strengthened the State's case [*sic*].

In discussing the weaknesses of the State's case,
Rathbun acknowledged that the victim was not available.
He stated:

"I ... recall that we talked about what would
happen if she were found and brought to court, and
I recall Mr. Bloom being very firm in his belief
that she would not testify against him, and I recall
us admonishing him that in our experience he needed
to anticipate that might happen. We needed to plan

for each eventuality and look at the merits of each."

Rathbun also testified he and McKinnon explained to Bloom that the speedy trial issue was complex and they could not predict an appellate court ruling on the issue. Rathbun testified he had no specific recollection of having discussed with Bloom the strength of the rape charge.

At the same evidentiary hearing, Bloom had the burden to raise those issues he believed he could establish by a preponderance of the evidence that would entitle him to relief under K.S.A. 60-1507. See K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2015 Kan. Ct. R. Annot. 271). Bloom recalled his conversations with trial counsel about the strengths and weaknesses of the State's case against him. He acknowledged having discussed the speedy trial issue and then stated, "I was told they can't prove a rape charge" because the victim "said it didn't happen." Bloom, however, subsequently offered conflicting testimony when he stated he could not recall discussing "what the possible substance" of the victim's testimony would be. And during closing arguments, Bloom's K.S.A. 60-1507 counsel only argued that Bloom "was led to believe ... that the case would be dismissed for [the] speedy trial issue" and the possibility that the victim would not show up to testify. Bloom's K.S.A. 60-1507 counsel did not argue Bloom received incorrect legal advice about the rape charge.

*Bloom II*, 2016 WL 2610265, at *4-6.

Because the state courts' analysis reasonably applied the legal standard established in *Strickland* to a reasonable interpretation of the facts, Petitioner is not entitled to relief on this claim.

## Conclusion

For the reasons set out above, the Court concludes Petitioner is not entitled to habeas corpus relief. Because the Court enters

a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability.

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253.

Having considered the record, the Court finds Petitioner has not made a substantial showing of constitutional error in his K.S.A. 60-1507 proceedings and declines to issue a certificate of appealability.

**IT IS, THEREFORE, BY THE COURT ORDERED** the petition for habeas corpus is denied. No certificate of appealability will issue.

DATED:  This 8th day of April, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW

U.S. Senior District Judge